**UNITED STATES of America,**
**Appellee,**

v.

**Marvin PEREIRA, Defendant–**
**Appellant.**

**Docket No. 05–5969–CR.**

United States Court of Appeals,
Second Circuit.

Argued: June 23, 2006.

Decided: Oct. 13, 2006.

Evan C. Williams, Assistant United States Attorney for Roslynn R. Mauskopf, United States Attorney (Emily Berger, Assistant United States Attorney, of counsel), Eastern District of New York, for Appellee.

Richard A. Miller (Jacqueline M. Skubik, on the brief), Miller & Skubik LLP, Islandia, NY, for Defendant–Appellant.

Before MINER, LEVAL, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge.

Defendant-appellant Marvin Pereira appeals from a judgment entered on October 19, 2005, in the United States District Court for the Eastern District of New York (Feuerstein, *J.*), following a guilty plea. Pereira, a citizen of El Salvador, pled guilty to illegally reentering the United States after having been deported following his 1998 conviction for commission of an aggravated felony. The district court sentenced him to 62 months imprisonment

and three years supervised release. Pereira raises a host of challenges to his sentence. Most significantly, he argues that the district court, when calculating the applicable sentence range under United States Sentencing Guideline ("U.S.S.G.") § 2L1.2, improperly increased his offense level on the basis of a 1998 conviction, for which he was adjudicated a youthful offender under New York State law. Because we hold that the district court correctly determined that the 1998 conviction mandated a 16–level enhancement to the base offense level, and because we reject the remainder of the defendant's challenges to his sentence, we affirm the judgment of the district court.

## BACKGROUND

### A.  The Guilty Plea and Prior Offenses

Pereira, who first entered the United States on June, 13, 1995, pled guilty to unlawful reentry following deportation after a conviction for the commission of an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Pereira's predicate felony occurred on September 11, 1997, when he and two accomplices robbed an individual at gunpoint.  When apprehended, the defendant, then sixteen years old, was found in possession of a stolen automobile.  On January 28, 1998, he was convicted by an adult court of two counts of robbery in the first degree and one count of criminal possession of stolen property in the fourth degree.  He was sentenced on each count to a term of one-to-three years incarceration, to run concurrently.  Pursuant to New York law, he was adjudicated a "youthful offender" with respect to these convictions.[1]  Pereira served his sentence in an adult facility in upstate New York. Following his release from prison and his commission of various parole violations, he was deported to El Salvador on June 6, 2000.

On November 11, 2003, Pereira was arrested in Huntington Station, New York for loitering and possession of a fraudulent Social Security card.  He pled guilty to forgery in the third degree, a misdemeanor, and was sentenced to fifteen days in custody.  After his arrest, Immigration and Custody Enforcement ("ICE") agents interviewed Pereira, who admitted to having been deported to El Salvador in 2000.  Upon investigation, the ICE officials determined that Pereira had not applied for, or been otherwise granted, permission from the Attorney General to reenter the United States.  A grand jury subsequently indicted Pereira on two counts: (1) unlawful reentry following conviction for an aggravated felony, and (2) possession of a forged document.  He pled guilty to the first count on June 17, 2005.

### B.  The Sentencing

#### i.  The Presentence Investigative Report

The United State Probation Office ("Probation Office") prepared a Presentence Investigative Report ("PSR") for Pereira.  It found that his base offense level was 8. On account of his 1998 robbery conviction, the PSR recommended that the offense level should be increased by 16 levels.  The report acknowledged that Per-

1.  "Under New York law, a sixteen, seventeen, or eighteen year-old youth, who meets certain conditions and is convicted as an adult, may be adjudicated a 'youthful offender,' thereby vacating and replacing his conviction with a youthful offender finding. . . . When a youthful offender adjudication is based on an underlying felony conviction, the defendant is committed to the custody of New York's Department of Correctional Services along with adult felony offenders." *United States v. Jones,* 415 F.3d 256, 260 (2d Cir.2005) (internal citations omitted).

eira was adjudicated as a youthful offender for this offense but pointed out that "pursuant to Application Note 1(a)(iv) of the Commentary to Guideline 2L1.2,[2] and per the guidance found in *United States v. Cuello,* 357 F.3d 162 (2d Cir.2004), a New York State youthful offender adjudication may be considered an adult felony conviction for the purposes of calculating a defendant's base offense level." It further noted that "[a]ccording to state penal law, youthful offenders are treated as adults in many respects, despite the terminology, and those convicted of a felony are committed, as are adult felons, to the custody of New York's Department of Correctional Services." The PSR then deducted 3 points for acceptance of responsibility, for a total offense level of 21. The report determined that Pereira's offenses, including the 1998 robbery conviction, resulted in a total of 3 criminal history points, and a criminal history category of II. Based on the total offense level of 21 and this criminal history category, the report found the relevant Guidelines range to be 41 to 51 months. The appellant objected to the report's calculations in a letter he submitted to the sentencing judge. The government and the Probation Office both defended the calculations in responses to the appellant's letter.

### ii. The Sentencing Proceeding

On October 19, 2005, Judge Feuerstein conducted the sentencing proceeding challenged here. Pereira's attorney brought up the "issue of whether the youthful offender adjudication that occurred early on in his life should be counted." Judge Feuerstein stated that she believed the government's interpretation "of the case cited," apparently referring to *Cuello,* "was correct, and I would be inclined, particularly in light of the crime involved here, to view it as an adult conviction." The district judge proceeded to sentence Pereira to 62 months imprisonment, as well as three years supervised release with the special condition that he participate in substance-abuse treatment. Subsequent to the judge's imposition of the sentence, the following exchange occurred between the district court and the assistant U.S. attorney:

> Government: Now that the Court has imposed the sentence, it's obvious from the Court's 62–month sentence, the Court understands that the sentencing guidelines which are 41 to 51 months are advisory.
>
> The Court: Of course.
>
> Government: And 3553, all the factors set forth.
>
> The Court: I have.
>
> Government: Your Honor, on appeal, and I expect there will be an appeal in this case because there was no waiver, the issue may be framed such that if the Second Circuit were to conclude that the 16 point enhancement based upon the youthful offender conviction was somehow erroneous, the question will be whether or not that somehow appreciably affected the Court's sentence. So I would ask would the Court be willing to state would you have imposed the 62–month sentence?

---

**2.** Section 2L1.2 of the Guidelines states that: "If the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is ... (ii) a crime of violence ... increase [the base offense level] by 16 levels...." U.S.S.G. § 2L1.2(b)(1)(A)(ii). A "crime of violence" is defined as including "robbery" in Application Note 1(B)(iii). U.S.S.G. § 2L1.2, comment. (n. 1). Application Note 1(A)(iv) provides that the 16–level increase "does not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *Id.*

The Court: I would have. Because the guidelines are only advisory, and I based my determination on prior conduct, including convictions, and the present course of conduct, and the person's background and likelihood of rehabilitation, and their expression of remorse.

## DISCUSSION

■ We review both Guidelines and non-Guidelines sentences for reasonableness. *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir.2006). A sentence may be deemed "unreasonable" for a variety of reasons. Most obviously, if the terms of the sentence do not necessarily reflect the objectives of sentencing upon consideration of all the facts, the sentence may be set aside as "unreasonable." *See, e.g., United States v. Rattoballi*, 452 F.3d 127, 132–37 (2d Cir.2006). In addition, a sentence may (but need not necessarily) be vacated as "unreasonable" because some steps taken by the sentencing court in determining or imposing the sentence did not comport with the requirements of law, either substantive or procedural. For example, the court is required before passing

sentence to "consider" how the prescriptions of the Guidelines would treat the case. *See United States v. Crosby*, 397 F.3d 103, 115 (2d Cir.2005). If the court fails to follow that required procedure, the sentence may be found unreasonable. *See, e.g., United States v. Fuller*, 426 F.3d 556, 560 (2d Cir.2005). A finding of unreasonableness can result also from substantive errors made in the course of consideration of the Guidelines' standards. For example, in *United States v. Rubenstein*, 403 F.3d 93, 100–01 (2d Cir.2005), we vacated a sentence for "unreasonableness" because, in considering what sentence the Guidelines would have prescribed, the court erroneously concluded that a four-level enhancement for permitless transportation of a hazardous or toxic substance applied, and that erroneous conclusion might have affected the court's ultimate determination of the sentence.[3]

Pereira challenges only the reasonableness of his sentence. He contends that the district court erred in its identification of the correct Guidelines range, in its consideration of the other § 3553(a) sentencing factors,[4] and in the adequacy of the expla-

---

**3.** We note that in dicta in *United States v. Selioutsky*, 409 F.3d 114, 118 (2d Cir.2005), and *Rattoballi*, 452 F.3d at 131–32, we used the term "procedural" to describe all errors made in the course of determining the sentence, whether the error resulted from a failure to take a required step, such as considering the Guidelines, or of misinterpretation of a substantive standard. Although we do not know whether a determination of reasonableness under *United States v. Booker*, 543 U.S. 220, 260–61, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), would be affected in any way by whether an error made during sentencing was called substantive or procedural, we note that there are good arguments for calling at least many such errors substantive, especially when the error consists of a misunderstanding of the meaning of a rule of law which affects the duration of the sentence. Because the choice of terminology does not matter in

the case before us, but may in some future case, we decline to say more on the question.

**4.** Section 3553(a) provides, in pertinent part, that the district court "shall consider" the following factors when determining the sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational train-

nation it gave for its sentence.[5]

With respect to its determination of the applicable Guidelines range, Pereira argues that the district court improperly (1) increased his offense level on the basis of the 1998 robbery conviction, for which he was adjudicated as a youthful offender, and (2) "double counted" the 1998 robbery conviction. As to the district court's consideration of the other § 3553(a) factors, Pereira asserts that it failed (1) to account for disparity between his sentence and those received by defendants convicted of unlawful reentry in jurisdictions with fast-track programs, and (2) to consider fully all the § 3553(a) factors in determining his sentence. Pereira further argues that the district court's explanation of its decision to impose a sentence outside the Guidelines range was insufficient to satisfy the requirements of 18 U.S.C. § 3553(c)(2).

Pereira raised only one of these objections—the one relating to the treatment of his youthful offender adjudication when calculating his offense level—before the district court. It is unresolved in our court whether we review sentencing challenges that are made for the first time on appeal under the traditional, stringent plain error standard or under a less rigorous one. *See United States v. Lewis,* 424 F.3d 239, 243 (2d Cir.2005) (noting the standard of review for unpreserved sentencing errors is unresolved); *see also*

*United States v. Khedr,* 343 F.3d 96, 101 (2d Cir.2003). Although we generally apply traditional plain error review when an appellant fails to raise an objection below, we have also held that when that situation occurs "in the sentencing context there are circumstances that permit us to relax the otherwise rigorous standards of plain error review to correct sentencing errors." *United States v. Sofsky,* 287 F.3d 122, 125 (2d Cir.2002). We need not decide here, however, what is the precise standard of review for the sentencing objections that Pereira did not raise before the district court, for his claims fail under any relevant standard.

### A. The District Court Correctly Calculated the Applicable Guidelines Range

■ Pereira argues that the district court miscalculated the applicable Guidelines range in two respects, by finding that the enhancement for a prior aggravated felony applied based on Pereira's youthful offender adjudication and by "double counting" this prior offense. We conclude that the district court committed no such error.

The guideline governing sentencing of those convicted of unlawful reentry, U.S.S.G. § 2L1.2 (the "Unlawful Reentry Guideline"), requires a district court to

---

ing, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] ...;
(5) any pertinent policy statement ... issued by the Sentencing Commission ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

**5.** We note that the district court here, acting *sua sponte,* went outside the range prescribed by the Guidelines without providing prior notice to the parties of its intent to do so. We recently held that a district court may not *sua sponte* impose a non-Guidelines sentence unless it gives the adversely affected party notice and allows that party the opportunity to challenge the grounds for such a sentence. *United States v. Anati,* 457 F.3d 233, 234 (2d Cir.2006). Pereira, however, has not raised this argument on appeal, and it is therefore waived. *See Graves v. Finch Pruyn & Co., Inc.* 457 F.3d 181, 184 (2d Cir.2006).

increase a defendant's base offense level by 16 levels when he was convicted of unlawful reentry after being previously deported following a prior felony conviction that was a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The Unlawful Reentry Guideline provides that a felony committed before the defendant was eighteen years old cannot be the basis for this enhancement "unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. § 2L1.2, comment. (n. 1). The appellant argues that his 1998 robbery conviction is not "classified as an adult conviction under the laws of" New York because it resulted in a youthful offender adjudication.

The question whether a youthful offender adjudications is "classified as an adult conviction under the laws of" New York for the purposes of calculating a defendant's offense level under the Unlawful Reentry Guideline is open in this Circuit.[6] But, although we have not addressed the issue with respect to the Unlawful Reentry Guideline, we have examined it in the context of other guidelines that have identical rules governing when a prior felony conviction for an offense committed before the

defendant was eighteen years old can be the basis for calculating the defendant's sentence. *See United States v. Jones*, 415 F.3d 256 (2d Cir.2005) (considering U.S.S.G. § 4B1.2, the Career Offender Guideline); *United States v. Cuello*, 357 F.3d 162 (2d Cir.2004) (considering U.S.S.G. § 2K2.1, the Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition Guideline).

Like the Unlawful Reentry Guideline, the guidelines at issue in *Jones* and *Cuello* permit the sentencing court to take account of a prior felony committed before the defendant was eighteen years old only when the conviction is "classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *See Jones*, 415 F.3d at 261 (quoting U.S.S.G. § 4B1.2 comment. n. 1); *Cuello*, 357 F.3d at 165 (quoting U.S.S.G. § 2K2.1 comment. n. 5). In *Jones* and *Cuello*, we held that in determining whether a defendant's youthful offender adjudications are classified as adult convictions under the laws of New York, the district court must look to the "substance" of the prior convictions and not merely how they are labeled by the state. *Jones*, 415 F.3d

**6.** We previously considered whether a felony for which the defendant was adjudicated a youthful offender could be taken into account when calculating the offense level under the Unlawful Reentry Guideline in *United States v. Reinoso*, 350 F.3d 51 (2d Cir.2003). The defendant in *Reinoso*, however, was sentenced before the Unlawful Reentry Guideline was amended to include in its commentary the critical language at issue here—namely, that the 16–level enhancement for a prior felony conviction "does not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. § 2L1.2, comment. (n. 1). Indeed, our decision in *Reinoso* relied, in part, on the fact that the version of the Unlawful Reentry Guideline in

effect at the time of the defendant's sentencing did not, in contrast to other guidelines, include this language. *Reinoso*, 350 F.3d at 55–56 (stating that, unlike other guidelines that "specifically define[ ] an 'adult conviction' as one that is 'classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted[,]' " the Unlawful Reentry Guideline as then constituted "does not define the term 'conviction' or provide any limitations on the types of adjudications that could constitute convictions, nor does it limit the definition of 'conviction' by reference to its state law characterization as an 'adult conviction.' "); *see also Jones*, 415 F.3d at 261 (noting that in *Reinoso* we did not have the opportunity to consider the "classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted" language).

at 263–64; *Cuello,* 357 F.3d at 168–69. On that basis, we concluded in both cases that the district court did not err in considering the respective defendant's youthful offender adjudications as adult convictions. *Jones,* 415 F.3d at 258; *Cuello,* 357 F.3d at 163–64.

We are persuaded that the analysis of youthful offender adjudications that we applied with respect to the guidelines at issue in *Cuello* and *Jones* pertains equally to the Unlawful Reentry Guideline. The guidelines applied in *Cuello* and *Jones* contain the identical restriction, which is phrased in the exact same language, as the Unlawful Reentry Guideline. And there is no basis for reading the language differently here. Upon consideration of all the circumstances, with particular focus on the fact that the defendant was convicted in an adult court and served his sentence in an adult facility, we find that the district court's treatment of his youthful offender adjudication as an "adult conviction" for purposes of calculating the offense level under the Unlawful Reentry Guideline was a proper exercise of the court's discretion.

■ The appellant also alleges that his sentence is unreasonable because the district court improperly "double counted" his 1998 robbery conviction in determining the applicable Guidelines range for his offense. It is well-established in this Circuit that a district court does not err when it uses a prior offense to calculate *both* the offense level *and* the criminal history category to determine the correct Guidelines range in unlawful reentry cases. *See United States v. Torres–Echavarria,* 129 F.3d 692, 698–99 (2d Cir.1997) (rejecting a "double counting" challenge raised by a defendant who pled guilty to one count of illegal reentry by an alien deported as an aggravated felon); *United States v. Campbell,* 967 F.2d 20, 25 (2d Cir.1992) (same). As we explained in *Campbell,* the offense level

and criminal history category "measure different things. The offense level represents a judgment as to the wrongfulness of the particular act. The criminal history category principally estimates the likelihood of recidivism." 967 F.2d at 24 (internal citations omitted); *see also United States v. Aska,* 314 F.3d 75, 78 (2d Cir. 2002) ("[I]t is within the Sentencing Commission's and Congress's prerogative to adopt double counting if it chooses." (citing *Torres–Echavarria,* 129 F.3d at 699; *Campbell,* 967 F.2d at 24–25)). Our decisions in these cases clearly control the resolution of Pereira's "double counting" claim.

**B.** *The District Court Properly Considered the § 3553(a) Sentencing Factors*

■ In addition to his objections to the calculation of the applicable Guidelines range, Pereira contends that his sentence is unreasonable because the district court did not adequately consider the other § 3553(a) sentencing factors. Pereira argues that the district court failed to apply one factor in particular-the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. He also asserts that the district court did not demonstrate that it had adequately considered the § 3553(a) factors as a whole. We address each argument in turn.

Section 3553(a)(6) provides that one factor a sentencing court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Pereira asserts that the district court did not consider the disparity between his sentence and those received by defendants convicted of unlawful reentry in jurisdictions with fast-track pro-

grams.[7] We recently held that "a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable." *United States v. Mejia*, 461 F.3d 158, 164 (2d Cir.2006). Accordingly, the fact that the district court did not address disparity arising from fast-track programs—assuming arguendo that the silence in the record means that the district court did not consider it, and that the failure to do so was error—did not render Pereira's sentence unreasonable.

■ Pereira also contends that the record does not demonstrate that the district judge adequately considered *all* the § 3553(a) factors before imposing the sentence. We disagree.

In *Crosby*, we held that, post-*Booker*, a district court must "consider" the factors listed in § 3553(a) in order for the sentence it imposes to be reasonable. 397 F.3d at 111. We have, however, steadfastly refused to require judges to explain or enumerate how such consideration was conducted. *See id.* at 113 ("[W]e will not prescribe any formulation a sentencing judge will be obliged to follow in order to demonstrate discharge of the duty to 'consider' the Guidelines. In other words, we will no more require 'robotic incantations' by district judges than we did when the Guidelines were mandatory."). Rather, "[a]s long as the judge is aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance, we

will accept that the requisite consideration has occurred." *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir.2005). Moreover, we "presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors.... [A]nd we will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced." *Fernandez*, 443 F.3d at 30.

Here, the appellant's contention that the district court did not properly take account of the § 3553(a) factors as required by *Crosby* rests on Judge Feuerstein's failure expressly to mention or explain her consideration of each § 3553(a) factor. But, a sentencing judge's decision not to discuss explicitly the sentencing factors or not to review them in the exact language of the statute does not, without more, overcome the presumption that she took them all properly into account. *See Fernandez*, 443 F.3d at 30; *Crosby*, 397 F.3d at 113.

Beyond the fact that Judge Feuerstein did not discuss each of the § 3553(a) factors explicitly, Pereira offers no evidence in support of his contention that her consideration of those factors violated *Crosby*. And, the record does not support such a contention. To the contrary, during Pereira's sentencing proceeding, the district judge stated that she was aware of the 41–to–51–month sentencing range established by the advisory Guidelines and of the § 3553(a) factors.[8] Furthermore, the dis-

---

**7.** Fast-track programs "work as follows: Through charge bargaining or stipulated departures, these programs allow a § 1326 offender who agrees to a quick guilty plea and uncontested removal to receive a reduced sentence.... In other words, in districts utilizing fast-track programs, offenders agree to

a quick removal, saving the Government resources, and in return they receive reduced sentences." *United States v. Santos*, 406 F.Supp.2d 320, 325 (S.D.N.Y.2005) (internal quotation marks and citations omitted).

**8.** In arguing that the district judge did not adequately demonstrate consideration of the

trict judge's interactions with Pereira's counsel made clear that she had reviewed his objections to the calculation of the Guidelines range. Finally, Judge Feuerstein offered reasons for her sentence that clearly referred to some of the § 3553(a) factors. We have no reason to doubt that the district court was "aware of both the statutory requirements and the sentencing range or ranges that are arguably applicable, and nothing in the record indicates misunderstanding about such materials or misperception about their relevance." *Fleming*, 397 F.3d at 100.

### C. The District Court Sufficiently Explained Its Decision to Impose a Sentence Outside the Guidelines

■ Finally, Pereira argues that district court failed adequately to articulate its reasons for imposing a non-Guidelines sentence. Because the district court's oral explanation of its sentence was sufficient and because Pereira waived any claim for relief on the basis of deficiencies in the district court's written explanation, § 3553(c)(2) does not provide a ground for vacating his sentence.

Section 3553(c)(2) requires that, for a sentence outside the Guidelines range, the district judge must state in open court "the specific reason for the imposition of a [non-Guidelines sentence], which reasons must also be stated with specificity in the written order of judgment and commitment." 18 U.S.C. § 3553(c)(2); *see also Rattoballi*, 452 F.3d at 138 (emphasizing that § 3553(c)(2) requires both an oral and a written explanation). We have declined to articulate precise standards for assessing whether a district court's explanation of its reason for imposing a non-Guidelines sen-

tence is sufficient to comply with § 3553(c)(2). *Id.* Our case law does, however, provide some general principles that guide our analysis of the matter. We have held that a district court's failure to identify *any* reasons for its imposition of a non-Guidelines range sentence violates § 3553(c)(2). *United States v. Lewis*, 424 F.3d 239, 245–46 (2d Cir.2005). We have also noted that although, unlike other circuits, we do not expressly require that a district court provide a "more compelling accounting the farther a sentence deviates from the advisory Guidelines range," we are more likely to affirm a sentence that diverges dramatically from the Guidelines if the district court "include[es] a compelling statement of reasons that reflect consideration of § 3553(a) and set forth why it was desirable to deviate from the Guidelines." *Rattoballi*, 452 F.3d at 135. And, with sentences that deviate from the Guidelines to a less significant degree, we have held that a more cursory explanation is sufficient. *See United States v. Goffi*, 446 F.3d 319, 321 (2d Cir.2006) (Where the district court imposed a sentence that was only six months longer than the top of the applicable Guidelines range, the court's explanation that it imposed the sentence "because of the criminal conduct that gave rise to the violation and the need to protect society" was enough to satisfy § 3553(c)(2)'s oral explanation requirement.).

Judge Feuerstein's oral explanation, while cursory, was sufficient to justify the non-Guidelines sentence imposed. Unlike *Lewis*, Judge Feuerstein *did* identify a specific reason for her imposition of a non-Guidelines sentence: She explained that she was sentencing Pereira to 62 months

---

requirements of § 3553(a), Pereira emphasizes that the judge's only reference to § 3553(a) was made in response to a question from the government. Pereira, however,

points to no case law, and we are not aware of any, holding that a sentencing judge must refer to § 3553(a) at all, much less do so without prompting.

because of the defendant's "prior conduct, including convictions, and the present course of conduct, and the person's background and likelihood of rehabilitation, and their expression of remorse." Although not expansive, this explanation is at least as specific as the explanation found to be sufficient in *Goffi*. Moreover, the sentence Judge Feuerstein imposed did not diverge significantly from the applicable Guidelines range, and thus she did not require "a compelling statement of reasons." *See Rattoballi*, 452 F.3d at 134–35.[9] We conclude that the district court's explanation of the sentence imposed satisfied the oral component of § 3553(c)(2).

The district court's written order of judgment, however, fails to comply with the other portion of the § 3553(c)(2) requirement—that the "written order of judgment and commitment" state "with specificity" "the specific reason for the imposition of a sentence different from that described." The written judgment here makes no mention of the reasons for the imposition of a sentence different from that recommended by the Guidelines. At oral argument, however, Pereira stated that if we found the district court's oral explanation to have been sufficient, he waived any relief that he might have been entitled to as a result of the inadequacy of the district court's written explanation. In light of the Pereira's conditional waiver, and our holding that the district court's oral explanation is sufficient, § 3553(c)(2) does not provide a basis for vacating Pereira's sentence.

9. If, however, we had held that the district court had erred in enhancing Pereira's offense level on the basis of his 1998 robbery conviction, the district court's explanation for its imposition of the sentence would have been insufficient. Without the sixteen-level enhancement, the upper end of the applicable Guidelines range would have been significantly less than 62 months, and, to justify the sentence, a more compelling explanation than that offered by the district court would have been necessary. *See Rattoballi*, 452 F.3d at 134–35.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.